UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SHERYL KAE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-00082 |
| | ) | Judge Sharp |
| CUMBERLAND UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This is an employment dispute with a twist. Not only does Plaintiff Sheryl Kae sue her former employer Cumberland University for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, she sues for negligence because she fell on the front porch of her home while talking with two fellow university employees.

In response to Defendant's Motion for Partial Summary Judgment (Docket No. 23) on the negligence claim, Plaintiff argues that Defendant's filing contravenes the parties' agreement "to stay potentially costly medical expert discovery regarding causation issues until after a ruling on Defendant's 'motion for partial summary judgment on the duty element of Plaintiff's negligence claim.'" (Docket No. 24 at 1). In reply, Defendant acknowledges the agreement and that its "motion includes a section arguing no cause in fact exists regarding the fall and concedes that argument goes beyond duty." (Docket No. 26 at 1). It points out, however, that the remainder of its motion "all relates to duty, including the foreseeability arguments and none of those arguments violate the agreement." Id. Defendant has also filed a Motion to Strike (Docket No. 25) portions of Plaintiff's response because it is larded up with facts that were not submitted in accordance with Local Rule

1

56.01.

Plaintiff did not file a response to Defendant's Motion to Strike. Rather, she filed an Amended and Corrected Response to Defendant's Statement of Undisputed Fact (Docket No. 27) that contained her Counter-Statement of Facts. Defendant has not responded to those counter-statements.

Despite the irregularities in the filings and the procedural missteps, the Court will grant Defendant's Motion for Partial Summary Judgment, rendering its Motion to Strike moot. This is because Plaintiff's version of the facts, coupled with those filed by Defendant to which she does not object, presents no genuine issue of material fact that precludes judgment in Defendant's favor on the negligence claim.

## I.

Plaintiff, a Caucasian female, was hired by Cumberland University as a Program Director and Associate Professor of Management and Marketing on January 31, 2012, for the period from June 1, 2012 through May 31, 2013. On May 7, 2013, her appointment was extended through May 31, 2014.

On April 14, 2014, Plaintiff received an email from Vickie Rickard, Cumberland University's Human Resources Director, informing Plaintiff that a discrimination and harassment complaint had been filed against her by Secret Rucker, an African-American coworker. The following day, Plaintiff met with Ms. Rickard and Annie Butler, the Assistant Director and only other employee in the Human Resources Department.

During the meeting, which Plaintiff characterizes as "lengthy and emotional," she informed Rickard and Butler that she felt she had been mistreated by her supervisor Stacey Garret because of

the personal relationship that Garret had with Rucker. Plaintiff also informed them that "Ms. Garret threatened to [take] 'action' [against] anyone in the department that continued to have problems with Ms. Rucker, a threat that Ms. Kae perceived to mean termination and even a legal action." (Plf's Counter-statement of Facts, Docket No. 27 at 4). The participants decided that this issue should be the subject of a follow-up meeting.

Initially, the parties agreed to meet the following morning to discuss the allegations about Garret because Plaintiff had dental surgery scheduled for April 17, 2014, and the university would be closed for the Easter holiday from April 18 to 21, 2014. However, on the morning of April 16, 2014, Plaintiff "decided she was still too upset from the previous day's meeting and asked Ms. Butler to reschedule their meeting for the following week." Butler agreed, even though "Ms. Rickard was eager to close out the complaint that had been filed against Ms. Kae," and Butler tried unsuccessfully to contact Plaintiff about that desire because she knew Plaintiff was upset about the complaint. (Id. at 5).

On April 17, 2014, Plaintiff underwent dental surgery and "was put to sleep under anesthesia." (Id.). After the procedure, which Plaintiff claims "was far more invasive and complicated" than she expected, Plaintiff took her dentist's advice to spend the rest of the day recovering. (Id.) Plaintiff drove herself home and, en route, stopped to pick-up Lortab, a painkiller that her dentist prescribed.

Upon arriving home at 11:30 a.m., Plaintiff took a nap. She awoke around 1:30 p.m. and took a Lortab shortly thereafter.

Because Plaintiff had been upset after the meeting on April 15, 2014, Rickard and Butler decided to perform what Rickard described as a "wellness check," and to deliver good news – not

3

only had the complaint by Rucker been resolved, Plaintiff's contract was being renewed for another year.

Rickard and Butler arrived at Plaintiff's home around 3:30 p.m. and rang the doorbell Plaintiff claims that their presence "startled her . . . because nobody knew she was home," and that she "felt intimidated, uncomfortable, and suspected she might be let go because the entire Human Resources department arrived at her home."

After opening the front door, Plaintiff reminded Butler and Rickard that she did not report to work because she had dental surgery that morning. Both visitors saw signs that Plaintiff had undergone a dental procedure. From Rickard's perspective, Plaintiff appeared tired.[1]

The envoy, Rickard, declined Plaintiff's invitation to come inside, stating that they were simply there to deliver a contract for the following year. Plaintiff surmised that they were there for more because the contract could have been mailed, and that they were also there to discuss Rucker's complaint. Plaintiff "felt she had not choice" but to step outside for the meeting. (Id. at 9). Even so, Plaintiff did not say anything about not wanting to come outside or being unable to speak with Rickard and Butler.

Plaintiff stepped onto the porch, but held onto the door handle. Rickard informed Plaintiff that she and a lawyer had completed the investigation into Rucker's complaint and that, while both parties in the incident had acted unprofessionally, there would be no disciplinary action, although Plaintiff's file would be "annotated." Plaintiff claims this caused her concern because she had not done anything wrong and asked for an explanation.

---

[1] During their depositions, Rickard recalled taking painkillers and sleeping more than usual after a dental procedure, while Butler recalled being disoriented and sleepy after a dental procedure.

Minutes into the conversation on the front porch, it appeared to Rickard and Butler that Plaintiff was about to fall down. They tried to catch Plaintiff but she passed out, fell back, and struck her head on a concrete planter and the porch.

Plaintiff regained consciousness and pulled herself to her hands and knees. Both Rickard and Butler helped Plaintiff to her feet, and Rickard checked to see if Plaintiff was bleeding, "while roughly rubbing a lump that had formed on her head." (Id. at 11).

Defendant claims that Rickard asked Plaintiff whether she wanted an ambulance called or other assistance. Plaintiff denies that such an offer was made.

Plaintiff told Rickard and Butler that she was too ill to remain outside and went into her home. According to Plaintiff, Rickard and Butler left so quickly that Plaintiff did not even have time to reach the sofa in her living room before they were gone.

Plaintiff admits that, prior to the fall, she (1) had not fallen nor passed out; (2) had no history of falling or passing out, even though she had taken pain medication in the past; (3) had no reason to believe that she would fall or pass out while speaking with Rickard and Butler; and (4) did not express any such concerns to them.

Neither Rickard nor Butler filed a report with Cumberland University indicating that Plaintiff had fallen and injured her head during the porch conversation.

**II.**

Plaintiff's negligence claim is governed by Tennessee law. Under that law, "[a] negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." West v. E. Tenn.

5

Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005).

"A duty of care is 'the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm.'" Downs ex rel. Downs v. Bush, 263 S.W.3d 812, 819 (Tenn. 2008) (quoting McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn.1995)). "Members of a civil society, as a general rule, must refrain from committing affirmative acts that a reasonable person should recognize as subjecting another to an unreasonable risk of harm or posing an unreasonable risk of invasion to another's interests." Marla H. v. Knox Cty., 361 S.W.3d 518, 531 (Tenn. Ct. App. 2011). "The core of negligence is the violation of this requirement by engaging in 'behavior which should be recognized as involving unreasonable danger to others.'" (quoting Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 355 (Tenn. 2008)).

"The common law has long recognized that an individual has a duty to exercise reasonable care in his or her activities in order to prevent unreasonable risks of harm from arising." Downs ex rel. Downs v. Bush, 263 S.W.3d 812, 819 (Tenn. 2008). Apart from this common law recognition, some duties are imposed by statute, regulation, or precedent. For those that are not, "Tennessee's courts use a balancing approach to determine whether the particular risk should give rise to a duty of reasonable care." Satterfield, 266 S.W.3d at 365. As the Tennessee Supreme Court in Satterfield cogently explained:

> A duty arises when the degree of foreseeability of the risk and the gravity of the harm outweigh the burden that would be imposed if the defendant were required to engage in an alternative course of conduct that would have prevented the harm. . . . The foreseeability and gravity of the harm are linked insofar as the degree of foreseeability needed to establish a duty is inversely proportional to the magnitude of the foreseeable harm. . . . The greater the risk of harm, the less degree of foreseeability is required. . . .
>
> While every balancing factor is significant, the foreseeability factor has taken on paramount importance in Tennessee. . . . This factor is so important that if an injury

could not have been reasonably foreseen, a duty does not arise even if causation-in-fact has been established. . . . Conversely, foreseeability alone is insufficient to create a duty. . . Thus, to prevail on a negligence claim, a plaintiff must show that the risk was foreseeable, but that showing is not, in and of itself, sufficient to create a duty. Instead, if a risk is foreseeable, courts then undertake the balancing analysis. [2]

* * *

The role that the concept of foreseeability plays in the context of a court's determination of the existence and scope of a duty differs from the role the concept plays when the fact-finder is addressing proximate causation. For a duty to exist, the defendant's "conduct must create a recognizable risk of harm to the [plaintiff] individually, or to a class of persons—as, for example, all persons within a given area of danger—of which the [plaintiff] is a member." . . . . However, because almost any outcome is possible and can be foreseen, the mere fact that a particular outcome might be conceivable is not sufficient to give rise to a duty. For the purpose of determining whether a duty exists, the courts' consideration of foreseeability is limited to assessing whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it. In this context, the courts are not concerned with the ultimate reasonableness, or lack of reasonableness, of the defendant's conduct. Rather, the courts are simply ascertaining "whether [the] defendant was obligated to be vigilant of a certain sort of harm to the plaintiff.

Id. at 365-67 (internal citations and footnotes omitted).

### III.

Defendant argues that Plaintiff's negligence claim fails because no duty was breached and the accident was unforeseeable. After all, Rickard and Butler went to Plaintiff's home to check on her well-being and to deliver good news.

In response, Plaintiff argues that Rickard and Butler, not only breached the ordinary duty of

---

[2] "When conducting this analysis, the courts have considered, among other factors: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; (5) the feasibility of alternative conduct that is safer; (6) the relative costs and burdens associated with that safer conduct; (7) the relative usefulness of the safer conduct; and (8) the relative safety of alternative conduct." Id.

care, but had a heightened duty, given the employer-employee relationship between Plaintiff and Cumberland University and the fact that they were its agent. In Plaintiff's view, when the university's "entire Human Resources department arrived unannounced at her doorstep, . . . rousing a reclined Plaintiff into an unexpected, stand-up meeting at her home to announce potentially-upsetting news about her racial harassment charge and the future of her employment, all directly following Plaintiff's dental surgery which left her unwell and unsteady and during an ongoing discrimination and harassment investigation," it was entirely foreseeable that Plaintiff would fall. (Docket No. 24 at 15-16). Not only that, once Plaintiff fell, Rickard and Butler scurried off without seeking professional medical care.

Regardless of the characterizations placed on the facts presented by the parties, the Court finds that Plaintiff has failed to establish a jury question on her negligence claim.

IV.

"Whether the defendant owed the plaintiff a duty of care is a question of law to be determined by the court." Staples v. CBL & Assoc., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). Likewise, " foreseeability, as an element of duty, must be analyzed within the restrictive parameters of a question of law." Easley v. Baker, 2005 WL 697525, at *6 (Tenn. Ct. App. Mar. 24, 2005); see Dickerson v. Rutherford Cty., 2013 WL 1501783, at *6 (Tenn. Ct. App. Apr. 11, 2013) ("Unlike foreseeability in the context of duty, foreseeability in the context of proximate cause is a question of fact to be determined by the trier of fact"); Wiehe v. Zimmerman, 2009 WL 1457148, at *4 (M.D. Tenn. May 21, 2009) (stating that forseeability as a part of duty is determined as a matter of law); Patterson-Khoury v. Wilson World Hotel-Cherry Rd., Inc., 139 S.W.3d 281, 287 (Tenn. Ct. App. 2003) (stating that "foreseeability . . . must, in the first instance, be considered by the court to

8

determine, as a matter of law, the scope of the duty owed"). In contrast, "[q]uestions regarding breach of duty, causation in fact, and legal causation are ordinarily questions of fact for the jury." Rains v. Bend of the River, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003).

In this case, the Court finds no violation of a duty because Plaintiff's fall was unforeseeable. This conclusion remains regardless of which version of events is credited.

"Foreseeability is the test of negligence" and "must be determined as of the time of the acts or omissions claimed to be negligent" Doe v. Linder Constr. Co., 845 S.W.2d 173, 178 (Tenn.1992). "Everyone has a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to another." Tompkins v. Annie's Nannies, Inc., 59 S.W.3d 669, 673 (Tenn. Ct. App. 2000). "No person, however, is expected to protect against harm from events which one cannot reasonably anticipate or foresee or which are so unlikely to occur that the risk, although recognizable, would commonly be disregarded." Id. "Specifically, '[t]he defendant, in order to be liable, must have been able to anticipate or reasonably foresee what usually will happen.'" Id. (quoting Lancaster v. Montesi, 216 Tenn. 50, 390 S.W.2d 217, 221 (1965)).

It is reasonable to expect that one coming off dental surgery may feel a bit out of sorts, be it giddy, groggy, or otherwise. It is also reasonable to expect that one taking pain medication may not be thinking clearly, or feel lethargic. But it was not reasonable in this case to expect that, many hours after the surgery, Plaintiff would keel over in the middle of a conversation in which she was informed that the discrimination complaint had been resolved (albeit with a note to the file) and her contract renewed. Plaintiff herself had no idea that she was going to pass out or fall, and stated no such concern to either Rickard or Butler. Her fall was a surprise to everyone and unforeseeable.

It is true, as Plaintiff claims, that "[t]he fact that an accident may be freakish does not *per*

9

*se* make it unpredictable or unforeseen." Elizabethton v. Sluder, 534 S.W.2d 115, 117 (Tenn.1976). This principle, however, is generally stated by the courts in discussing foreseeability in the context of proximate cause, which is a jury question, and, accordingly, is often followed by an observation to the effect that it is "'not necessary that the defendant should have notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the prudent eye.'" Roe v. Catholic Diocese of Memphis, Inc., 950 S.W.2d 27, 32 (Tenn. Ct. App. 1991) (citation omitted).

Regardless, "Tennessee courts have repeatedly stated that negligence is not presumed from the mere fact of an accident or injury." Omni Ins. Co. v. Nickoloff, 2016 WL 3214774, at *3 (Tenn. Ct. App. June 2, 2016) (collecting cases). The record before the Court proves that an accident happened and nothing more, other than (at least from Defendant's perspective) the old adage that no good deed goes unpunished.

The employer/employee relationship between Cumberland University and Plaintiff, Rickard, and Butler does not alter this Court's conclusion. "Tennessee law provides that while 'an actor is always bound to prevent his acts from creating an unreasonable risk to others, he is under the affirmative duty to act to prevent another from sustaining harm only when certain socially recognized relations exist which constitute the basis for such legal duty.'" Satterfield, 266 S.W.3d at 360 (quoting Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn.1997)). The Tennessee Supreme Court has found such socially recognized or "special relationships" to "include those of innkeeper and guest, common carrier and passenger, possessors of land and guests, social host and guest, and those who have custody over another," and has observed that the Second Restatement of Tort "envisions that . . . 'socially recognized relations' may include parent and child, employer and

10

employee, and innkeeper and guest," Biscan v. Brown, 160 S.W.3d 462, 479 n.4 (Tenn. Sup. Ct. 2005).

While "[t]he special relationship doctrine carves out an exception to the general rule that there is no duty to act for the protection of a third party," id., it is not without bounds. In Lett v. Collis Foods, Inc., 60 S.W.3d 95, 104 (Tenn. Ct. App. 2001), for example, the Tennessee Court of Appeals observed that while "[i]t is unclear whether Tennessee has adopted § 317 of the Restatement relating to employer-employee relationships," even if it has been adopted, that section requires that, "for a duty to exist, the employee must have been on the employer's premises or using the employer's chattel." Moreover, "for a special relationship to exist the defendant must have the means and ability to control." Biscan, 160 S.W.3d at 481. And, "in determining whether a special relationship exists so as to create an affirmative duty to act for the protection of a third party, Tennessee courts must consider whether public policy and foreseeability favor recognizing a special relationship[.]'" Collins v. Arnold, 2007 WL 4145025, at * 9 (Tenn. Ct. App. 2007) (quoting Biscan, 160 S.W.3d at 480).

Here, the fall occurred on private property away from Cumberland University. If, as Plaintiff claims, Rickard and Butler hurried off without showing due concern, that action or inaction was taken by individuals who had no control over Plaintiff. Regardless, Rickard's and Butler's alleged haste in departing the scene was unforeseeable to Cumberland University, just as Plaintiff's fall was unforeseeable to Rickard and Butler.

Plaintiff cites Cullum v. McCool, 432 S.W.3d 829, 833 (Tenn. 2013) for the proposition that "[i]t is axiomatic under Tennessee law that," where "Defendant's conduct alone . . . placed Plaintiff in the zone of danger, Defendant [has] a positive duty to remedy the dangerous situation for which

11

it was responsible." (Docket No. 24 at 11). Leaving aside that Cullum was a premises liability case where the shopkeeper ejected an intoxicated and belligerent individual knowing that she would drive, the court found that there was "specific foreseeablilty" that the patron presented a threat since "[i]t is common knowledge that drunk driving directly results in accidents, injuries and death." Id. at 835 (citation omitted). Here, Rickard and Butler, in speaking with Plaintiff on her front porch, did not place Plaintiff in a zone of danger, nor could it be said that, in so doing, it was reasonable to expect that Plaintiff would pass out.

Finally, Plaintiff argues that "Defendant owed yet another duty to Plaintiff once it voluntarily came to her aid after she collapsed on her front porch" - specifically, the duty to act reasonably. (Docket No. 24 at 12). She cites Biscan and other cases for the proposition that "[o]ne who assumed to act, even though gratuitously, may thereby become subject to the duty of acting carefully." (Id.). Biscan also states, however, that "[w]hether a person has assumed a duty to act is a question of law." Biscan, 160 S.W.3d at 483.

If, as Plaintiff claims, Butler and Rickard ran off after the fall and her assertion that she was not feeling well and was going back inside, then they did not assume a duty to act. If, as Defendant claims, Rickard and Butler asked if Plaintiff wanted an ambulance called or other help and Plaintiff refused, then those two did not fail to act reasonably.

**V.**

On the basis of the foregoing, Defendant's Motion for Partial Summary Judgment on Plaintiff's negligence claim will be granted. Its Motion to Strike will be denied.

An appropriate Order will enter.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE